## Ex Parte Charles Andrews.*

Springfield Court of Appeals. Opinion filed May 23, 1929.

*Corpus Juris-Cyc references: Motor Vehicles, 42CJ, section 194, p. 729, n. 23; Statutes, 36Cyc, p. 1107, n. 30, 32; p. 1128, n. 58; p. 1129, n. 59.

*Tatlow & Schwab* for petitioner.

*Edward Barbour, Jr.,* for respondent.

SMITH, J.—This is an original proceeding in *habeas corpus* brought by the petitioner, Charles Andrews, a resident of Springfield, Missouri, to test the legality of his imprisonment, under complaint charging him with violating a certain portion of an ordinance of said city, passed and approved February 5, 1929. The following stipulation was filed:

"It is stipulated between the parties hereto that issuance of the writ has in this cause been waived, and that the facts are as follows:

"That the petition filed in said cause contains a true and accurate recital of the terms and provisions of an Ordinance of the city of Springfield, Missouri; that when said ordinance became effective the petitioner was engaged in the taxicab business in said city, and owned six motor vehicles which were being operated as taxicabs; that each of said motor vehicles was not designed or regularly used for carrying (a) freight and merchandise, or (b) more than eight passengers, and, hence, was not a "commercial motor vehicle" as defined by the Laws of Missouri, 1921, Extra Session, page 77, and in fact could not carry more than seven passengers at one time; that said petitioner had paid on each motor vehicle being operated in said taxicab business, ten and 50/100 ($10.50) dollars to the State of Missouri, and that such sum was all that was and is required by said State of Missouri; that said petitioner refused to pay the tax required under the terms of said Ordinance on said motor vehicles, whereupon

a warrant was duly issued, charging said petitioner with violation of said Ordinance, a true copy of which has been filed in this court, and said warrant was executed by G. C. Pike, Chief of Police of said City, by arresting said petitioner and taking him into custody. It is further stipulated that the above statement of facts shall be taken and treated by the court as if made as a return to a writ duly issued by this court.''

That part of the City Ordinance which is involved is as follows:

''Be it ordained by the council of the city of Springfield, as follows:

''Section 1: No person, firm, or corporation, shall engage in the business of transporting passengers for hire within the limits of Springfield, Missouri, without first obtaining from said city a license to carry on and engage in said occupation for which license a charge shall be made as follows:

''Fifty ($50) dollars per year and twenty-five ($25) dollars for six months, for each and every motor vehicle having a seating capacity of not more than seven (7) passengers, and used in the carrying on of said business of transporting passengers for hire.

''Ninety ($90) dollars per annum, for each and every motor vehicle having a seating capacity of more than seven (7) passengers and used in the carrying on of said business of transporting passengers for hire.

''And each motor vehicle so used in said business shall have displayed upon it at all times a separate license tag issued in the name of the owner of said car by the Commissioner of Revenue; such license shall be obtained and paid for semi-annually in advance.

. . . .

''Section 4: Any person, firm or corporation violating any of the provisions of this Ordinance shall be deemed guilty of a misdemeanor, and upon conviction before the Municipal Judge shall be punished by a fine of not less than five ($5) dollars nor more than one hundred ($100) dollars, or by imprisonment in the city jail for a period of not more than thirty (30) days, or by both such fine and imprisonment.

''Section 5: This Ordinance shall be in force and effect from after its passage an emergency existing within the meaning of the laws governing cities of the second class, this ordinance being necessary for the immediate preservation of the public peace, health and safety.''

The question involved in this proceeding is whether or not the city of Springfield has power to levy and collect an occupation tax on operators of taxicabs for hire in Springfield in excess of one-half the registration fee provided and collected by the State.

Under the agreed statement of facts filed herein, the State collects from the petitioner a license fee of ten and 50/100 dollars for each

motor vehicle used by him. The petitioner claims that the most the city should collect from him is one-half of the above-named amount paid to the State upon each motor vehicle used, and that the provision of the city ordinance wherein the city is attempting to collect an occupation tax of fifty dollars per year for each and every seven passenger motor vehicle owned and operated for hire by him is in violation of paragraph C of section 24 of the Session Acts of Missouri, 1921, Extra Session, pages 76, 100, and is therefore illegal, and since the ordinance levying such a tax is illegal, then, his arrest and restraint is illegal. Section 24, paragraph C, or that part of it involved is as follows:

"Municipalities may, by ordinance, levy and collect license taxes from the owners of and dealers in motor vehicles and trailers, residing in such municipalities, . . . but such license taxes shall not exceed one-half of the registration fee provided for herein, including the cost of plate and notarial fee, . . . provided however, that municipalities may impose occupation taxes on the business of transporting passengers, freight and merchandise for hire carried on within their limits, and may measure such taxes by the number of motor vehicles engaged in such transportation."

The petitioner claims that a license tax and an occupation tax is one and the same thing, and that the limitation placed on the license tax in section 24, paragraph C is a limitation upon or a prevention of another tax upon the same vehicle called occupation tax, and the petitioner further claims that the proviso clause of the section of the statute providing that "Municipalities may impose occupation taxes on the business of transporting passengers . . . for hire within their limits, and may measure such taxes by the number of motor vehicles engaged in such transportation" does not purport to change, and does not in fact change, the limitation expressly contained in clause C of said section limiting the amount cities may collect to one-half of that collected by the State, or, to put it in another way, the petitioner claims that the proviso clause cannot be by the courts construed as if it read that municipalities may impose occupation taxes in excess of one-half of the registration fee provided by the statutes. The petitioner further claims that the proviso clause of said section is defective legislation, and in reality has no practical meaning or effect, and that the section should be read and construed just as if the proviso was not written into said section, and the petitioner insists that with said proviso considered as meaningless that his case is on all fours with the case of Ex Parte Tarling, 241 S. W. 929, and that the ordinance of the city of Springfield, under which he is held in custody, is void for the identical reason that the ordinance under consideration in the Tarling case was held void.

862

The petitioner in his brief suggests that when the Tarling case was started the provision of the section of the statute, now under consideration, had not been enacted, and evidently it was not in effect at the starting of that case, for the court did not mention it in the opinion, and to that extent, at least, that case is not identical with the case under consideration, and we think not controlling in this case.

It is the duty of the courts, if possible, to ascertain the meaning of and to give full force and effect to every legislative enactment that is in keeping with the constitutional provisions. [State ex rel. v. Baker et al., 293 S. W. 399, 401, and cases cited.]

The rules of statutory construction require us to give effect to every provision of the statute if possible. [36 Cyc. 1128, 1129; In re Squaw Creek D. D. No. 1, 289 S. W. 19, 21.]

When different sections of the statutes bear on a subject it is a rule of construction that said sections must be harmonized if possible (State v. Freeland, 300 S. W. 675); and no doubt such rule applies as to different sentences or clauses of the same section of a statute. The legislative intention is to be ascertained from the words used in a statute. Another rule of construction is that effect is to be given to every word, clause and sentence within a statute. [Hannibal Trust Co., Executor, v. Elsea et al., 315 Mo. 485, 286 S. W. 371.]

We feel that the holdings of our courts, as shown by the foregoing authorities and the many cases cited in them, justify us in placing a construction upon the meaning of paragraph C of section 24 of the 1921 Act. Keeping in mind the rules of construction as laid down by our statutes and the courts of our State, let us undertake to see just what the Legislature had in mind when said section was enacted, and what in fact said section does say and mean.

In order to arrive at the meaning of this section, considering the first part thereof and that part following the words "provided, however," we must necessarily take into consideration the meaning of the word "provided" and its use by the legislators. We find the meaning of this word has been considered often by the courts in the construction of statutes. In the case of Carter, Webster & Co. v. United States, 143 Fed. 256, we find this language: "The word 'provided' though sometimes used in statutes to except the clause covered by it from the general provision of the statutes is nevertheless often used as a conjunction to an independent paragraph."

And in discussing the meaning of the word, the Supreme Court of the United States in an early case used this language: "The general purpose of a proviso, as is well known, is to except the clause covered by it from the general provisions of a statute, or from some provision of it, or to qualify the operation of the statute in some particular. But it is often used in other senses. It is a common practice

in legislative proceedings, on the consideration of bills, for parties desirous of securing amendments to them, to precede their proposed amendments with the term 'provided' so as to declare that, notwithstanding existing provisions, the one thus expressed is to prevail, thus having no greater signification than would be attached to the conjunction 'but' or 'and' in the same place, and simply serving to separate or distinguish the different paragraphs or sentences." [Georgia R. & Banking Co. v. Smith (U. S. Sup. Court Reports), 32 Law Ed. 377.]

And in Webster's Revised Unabridged Dictionary we find this definition "Provided, conj. On condition; by stipulation; with the understanding; if; usually followed by 'that.'" And in Bouvier's Dictionary we find this language: "The general purpose of a proviso is to except the clause covered by it from the provisions of a statute; or to qualify the operation of a statute. But while this is its primary purpose, it may have a general application. It might some times mean additional legislation. Sometimes a proviso introduces several stages of consecutive operation, which would be better expressed by 'and.' It is impossible to deduce any general rule from the doctrines laid down by the courts in the multitude of adjudicated cases." And in the case cited by petitioner, of Brown v. Patterson, 224 Mo. 639, 124 S. W. 1, wherein the court was discussing the proviso in a statute, the court there held, as had been held by our courts before, that a proviso sometimes had an enabling and not a disabling effect upon the statute.

It is our opinion that there is a distinction between the "license tax" mentioned in the first part of paragraph C of section 24 and the "occupation tax" mentioned in the proviso of said section, for said occupation tax is only due and payable when the owner of motor vehicles uses them for hire upon the streets of the city.

And we find that our courts have defined "occupation taxes" as thus: "where a tax is measured by the gross receipts of the business, the amount of premiums received by an insurance company, the number of carriages kept by a livery stable, the number of passengers transported by a street railway company, and other taxes of that nature, it is occupation tax—one form of excise tax." [Viquesney v. Kansas City, 266 S. W. 1. c. 702, and cases cited.]

The ordinance attacked in this proceeding levies an occupation tax —and the city of Springfield is authorized by the general statute, section 7976, Revised Statutes 1919, to levy a tax on occupations, so having in mind the rules of construction heretofore mentioned, the wording of the particular part of the statute attacked therein, the definition of the word "provided" and the general provisions of our statute, we are of the opinion that the Legislature intended to say, and did say, that notwithstanding there is a provision in the first

part of paragraph C in section 24 restricting the registration fee or license fee that a city may collect from the owner of a motor vehicle to one-half the amount of such fee collected by the State, yet the proviso written in said paragraph thereafter, has the effect of saying, and does say, that the limitation heretofore mentioned shall stand unless, or until, the city shall pass an ordinance providing for the collection of a tax for the use of its streets by users of motor vehicles for hire. In that sense the proviso is a restriction of the limitation mentioned in the first part of the paragraph; that is, considering the entire paragraph it means, and says, that such municipalities may not collect a license tax in excess of one-half of the registration fee collected by the State, with the understanding, however, if a motor vehicle owner elects to use his vehicle for hire upon the streets of the city, then, in that event, the city may by proper ordinance collect an occupation tax, and that the former provision in the statute does not prohibit municipalities from enacting ordinances providing means for collecting a tax from the users of motor vehicles if such use is the carrying of passengers for hire within the city limits.

It is our opinion that the proviso in this statute does mean something, that it is not a disabling statute but that it is an enabling one in which a right is given to municipalities, and such a right as the city of Springfield has exercised. We are not unmindful of the importance of the question involved in this case, and have given the subject very careful consideration. On the record before us we are of the opinion that the petitioner, Charles Andrews, should be and he is hereby remanded to the custody of the Chief of Police of the city of Springfield to be proceeded against as provided by law.

*Cox, P. J.,* and *Bailey, J.,* concur.